**PUGET SOUND BRIDGE & DRY DOCK COMPANY, Plaintiff,**

v.

**J. J. O'LEARY, Deputy Commissioner, Bureau of Employee's Compensation, Fourteenth Compensation District, United States Department of Labor, Defendant.**

No. 5942.

United States District Court
W. D. Washington, N. D.
Dec. 13, 1963.

Edward S. Franklin, of Bogle, Bogle & Gates, Seattle, Wash., for plaintiff.

Brockman Adams, U. S. Atty., Seattle, Wash., Douglas M. Fryer, Atty., Admiralty & Shipping Section, Dept. of Justice, Seattle, Wash., and Keith R. Ferguson, Special Asst. to the Atty. Gen., Dept. of Justice, San Francisco, Cal., for defendant.

John J. O'Connell, Atty. Gen., of the State of Washington, John C. Martin, Asst. Atty. Gen., Olympia, Wash., amicus curiae.

BEEKS, District Judge.

The Bureau of Employee's Compensation, having been struck down in an attempt to extend its jurisdiction and authority to an injury occurring on a dock, pier or wharf, Atlantic Stevedoring Company v. O'Keeffe (S.D.Ga.1963), 220 F. Supp. 881, now seeks to extend it into a new and different field.

The facts of the case are not in dispute and are substantially as follows: On May 15, 1962, claimant, Robert H. Bradley, a machinist employee of plaintiff, was severely injured while installing a rudder post bearing on the stern of the USNS "COCHRANE", which was lying on plaintiff's building way, Plant No. 1, Seattle, Washington, when he was struck by a piece of timber and knocked from the scaffolding on which he was working to the building way below.

The building way on which the accident occurred is a permanent shipyard structure located entirely on land which was designed and is used exclusively for new ship construction. To facilitate the launching of completed vessels, the outermost or seaward end of the building way extends into the water on an incline. The tide ebbs and flows around this outermost portion.

At the time of the claimant's accident, the "COCHRANE" was unlaunched. Indeed, it did not become waterborne nor had it undergone "baptismal rites" until some two months following the accident.

The jurisdictional provisions of the Act are set forth in Section 3(a), 33 U.S.C. § 903(a), and limit the award of compensation for disability or death as follows:

> "Compensation shall be payable under this chapter in respect of dis-

ability or death of an employee, but *only if* the disability or death *results from an injury occurring upon the navigable waters of the United States (including any dry dock)* * * *.*" (Emphasis added)

The defendant Deputy Commissioner made the following jurisdictional finding:

" * * * that the injury sustained by claimant occurred 'upon the navigable waters of the United States (including any dry dock);' that the building way in which the vessel was being constructed is such a dock within the meaning of the statute. * * *"

Defendant contends that there is a presumption of coverage under Section 20 of the Act, 33 U.S.C. § 920, which compels the court to sustain the compensation award. The court disagrees. Such presumption is inapplicable with regard to the question of jurisdiction, Atlantic Stevedoring Company v. O'Keeffe, supra; Alaska Airlines v. O'Leary (W.D.Wash. 1963), 216 F.Supp. 540, but even assuming the presumption to be applicable, the conclusion of the Deputy Commissioner is overcome by substantial and convincing evidence and is patently erroneous.

During argument defendant wisely abandoned his claim that the ship building way involved in this case is an extension of the navigable waters of the United States. Defendant continues to maintain, however, that the term "dry dock" in Section 3(a) includes such a building way.

As pointed out by Justice Douglas in Avondale Marine Ways, Inc. v. Henderson, 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77 (1953):

" * * * there are three kinds of dry docks. (1) A floating dry dock, as its name makes clear, floats on the water, the vessel resting on the bottom of the dry dock after the water has been removed. (2) A graven dry dock is dug into the land.

The vessel floats in but rests on land once the water has been pumped out. (3) Finally there is the marine railway, on which the vessel is drawn out of the water, instead of the water being drawn away from the vessel."

Defendant argues that a building way is within the meaning of the term "dry dock" because a building way resembles a marine railway and could be adapted to perform the same functions, citing in support thereof: (1) The Avondale case, supra, wherein jurisdiction was upheld where work was being performed on a completed vessel drawn up on a marine railway for repairs, and (2) Calbeck v. Travelers Ins. Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), in which jurisdiction was upheld where work was being performed on a new but uncompleted vessel which had been launched and was afloat upon navigable waters. Again, the court disagrees

While there may be a modicum of similarity in appearance between a building way and a marine railway, there is no identity or similarity of use whatsoever. The fact is that the building way involved in this case is neither a dry dock nor a marine railway and no amount of imagination or wishful thinking can make it so.

If it is socially desirable to extend the application of the Longshoremen's and Harbor Workers' Compensation Act to the construction of a new, unlaunched and nonwaterborne vessel on a building way located on land, it is a matter for Congressional consideration, and should not be brought about by administrative or judicial legislation. Berryhill v. Pacific Far East Line (9th Cir. 1956), 238 F.2d 385.

Summary judgment is granted in favor of plaintiff. Plaintiff's counsel shall prepare a form of decree in accordance with this opinion for presentation to the court at 9:30 a. m., December 20, 1963.