383 F.2d 730
 John HOUSER, Appellant,
v.
J. J. O'LEARY, Deputy Commissioner Fourteenth Compensation District, American Mail Line, Ltd., a corporation, and Fireman's Fund Insurance Company, a corporation, Appellees.
 No. 21289.
 United States Court of Appeals Ninth Circuit.
 September 27, 1967.
 
 Philip Levin, Pozzi, Levin & Wilson, Portland, Or., for appellant.
 Barefoot Sanders, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Sidney I. Lezak, U. S. Atty., Portland, Or., Leavenworth Colby, Atty., Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., Lloyd Weisensee, Gray, Frederickson & Heath, Portland, Or., for appellees.
 Before POPE, MERRILL and BROWNING, Circuit Judges.
 MERRILL, Circuit Judge:
 
 
 1
 The question presented by this appeal is whether the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S. C. § 901 et seq., covers injuries occurring on wharves.
 
 
 2
 Appellant is a longshoreman who, on May 1, 1965, was engaged in loading the vessel Guam Bear at Portland. He was working as a slingman on a pier adjacent to the ship, which was afloat on navigable waters. His job was to stand on top of a railroad gondola car and hook a sling onto a load of cargo, which would then be lifted from the gondola to the deck of the ship by the ship's gear. As Houser stepped aboard the gondola, he fell over backward from the car onto the pier, a distance of about 18 feet, and suffered severe injuries. The ship's gear played no part in the accident.
 
 Section 903(a) provides:
 
 3
 "Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. * *"
 
 
 4
 Appellee Deputy Commissioner rejected appellant's claim for compensation upon the ground that the wharf where the injury occurred was, under a settled line of precedent, an extension of the land to which it was attached, and thus that the injury had not occurred on navigable waters. The District Court affirmed on the same ground. 253 F.Supp. 417 (D. Or.1966). We agree.
 
 
 5
 This court has, in the past, rejected coverage by the Act of injuries so located. Johnston v. Marshall, 128 F.2d 13 (9th Cir.), cert. denied, 317 U.S. 629, 63 S.Ct. 44, 87 L.Ed. 508 (1942).[1] Appellant contends, however, that the "navigable waters" concept should be expanded to make coverage under the Act coextensive with the limits of Admiralty jurisdiction. He points out that his employment under a maritime contract is within traditional Admiralty contract jurisdiction and that some wharf locus torts are covered by the current view of Admiralty tort jurisdiction. As support for his contention he relies on language in Calbeck v. Travelers Insurance Company, 370 U.S. 114, 130, 82 S.Ct. 1196, 1205, 8 L.Ed.2d 368 (1962). There the Court, quoting Judge Hutcheson in De Bardeleben Coal Corporation v. Henderson, 142 F.2d 481, 483-484 (5th Cir. 1944), stated:
 
 
 6
 "It is sufficient to say that Congress intended the compensation act to have a coverage co-extensive with the limits of its authority * * *. In the application of the act, therefore, the broadest ground it permits of should be taken."
 
 
 7
 To read this language as applying to the problem before us is to read it out of context. Neither Calbeck nor De Bardeleben was concerned with the meaning of the "navigable waters" requirement of § 903(a). The problem in those cases was how to construe the second requirement of § 903(a): whether the Act provided compensation for injuries sustained by employees on navigable waters "whether or not a particular injury might also have been within the constitutional reach of a state workmen's compensation law." 370 U.S. at 117, 82 S.Ct. at 1198.
 
 
 8
 It may well be true that when it was judicially established that wharves were extensions of land the state of the law then excluded injuries occurring on land from Admiralty tort jurisdiction, and that the law has since changed and is still undergoing change in this respect. The fact is, however, that Congress did not choose to make the coverage of the Act coextensive with Admiralty jurisdiction in respect to locus of injury. Legislative history referred to in Calbeck, supra, at 122, 82 S.Ct. at 1201, shows that an earlier version of the Act provided:
 
 
 9
 "This act shall apply to any employment performed on a place within the admiralty jurisdiction of the United States * * *."
 
 
 10
 This language was rejected in favor of "upon the navigable waters of the United States." As stated by Judge Hays, dissenting in Michigan Mutual Liability Company v. Arrien, 344 F.2d 640, 649 (2d Cir.), cert. denied, 382 U.S. 835, 86 S.Ct. 80, 15 L.Ed.2d 78 (1965),[2] this "was a conscious choice of adopting known distinctions based on preexisting admiralty decisions, rather than tying the scope of the Act to changing concepts of maritime jurisdiction."[3]
 
 
 11
 That this is a choice the courts should not upset is strongly suggested by Calbeck where, in reference to the problem with which it was dealing, the Court stated:
 
 
 12
 "Such a purpose would require, rather, that federal coverage expand and recede in harness with developments in constitutional interpretation as to the scope of state power to compensate injuries on navigable waters. But that would mean that every litigation raising an issue of federal coverage would raise an issue of constitutional dimension, with all that that implies; and that each and every award of federal compensation would equally be a constitutionally premised denial of state competence in a like situation. We cannot conclude that Congress imposed such a burden on the administration of compensation by thus perpetuating the confusion generated by Jensen. To dispel that confusion was one of the chief purposes of the Longshoremen's Act." 370 U.S. at 126, 82 S.Ct. at 1203.
 
 
 13
 If we adopted appellant's view that the Act's coverage flows and ebbs with the scope of Admiralty tort jurisdiction, every case in this area would require a decision of constitutional dimension as to the reach of Admiralty and we would be importing into the Act the very evil the Court sought to prevent in Calbeck.
 
 
 14
 Judgment affirmed.
 
 
 
 Notes:
 
 
 [1]
 Even prior to the enactment of the Longshoremen's Act in 1927 injuries occurring on wharves were held to be land injuries and thus not on the "navigable waters" which then constituted all that was within the scope of general maritime law. State Industrial Commission of State of N. Y. v. Nordenholt Corp., 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933 (1922). Decisions since the Act have assumed that by its terms it excludes injuries suffered on piers, wharves and similar structures. E.g., Swanson v. Marra Bros., 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946); O'Keeffe v. Atlantic Stevedoring Co., 354 F.2d 48 (5th Cir. 1965); American Export Lines v. Revel, 266 F.2d 82 (4th Cir. 1959)
 
 
 [2]
 In this case the court held for coverage by the Longshoremen's Act of an injury occurring on a "skid," a portable extension of a wharf. It recognized, however, that "injuries upon wharves or other extensions of land permanently covering navigable waters were not to be covered." 344 F.2d at 644
 
 
 [3]
 Appellant relies on the Admiralty Extension Act of 1948, which extended maritime tort jurisdiction to injuries occurring on land but caused by a vessel on navigable waters. 46 U.S.C. § 740. That this statute did not by implication extend the coverage of the Longshoremen's Act is clear for the reasons given in Johnson v. Traynor, 243 F.Supp. 184, 190-194 (D.Md.1965). The shoreward movement of the doctrine of unseaworthiness, noted in Gutierrez v. Waterman S. S. Corp., 373 U.S. 206, 214-215, 83 S. Ct. 1185, 10 L.Ed.2d 297 (1963), is similarly inapplicable to appellant's claim. Although Houser, since he was engaged in unloading cargo, may well have come within the Admiralty jurisdiction for the purpose of recovery under the unseaworthiness doctrine had ship's gear been involved, he cannot claim that this status allows him to claim compensation under the Longshoremen's Act